UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

| | |
|---|---|
| MEE MOUA LOR,            )  | |
|    *Plaintiff*,            ) | |
|                ) | |
|    *vs*.            ) | 3:12-cv-00196-jems |
|                ) | |
| CAROLYN W. COLVIN, *Acting Commissioner*   ) | |
| *of Social Security Administration*,       ) | |
|    *Defendant*.            ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**[1]

Plaintiff Mee Moua Lor applied for supplemental security income from the Social Security Administration ("SSA") on October 16, 2007.  After a series of administrative proceedings and appeals, including a hearing in July 2010 before Administrative Law Judge ("ALJ") Stephen J. Ahlgren, the ALJ determined that Ms. Lor was not entitled to supplemental security income. In January 2012, the Appeals Council denied Ms. Lor's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review.[2]  *See* 20 C.F.R. § 404.981.  Ms. Lor then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

**I.**
**STANDARD OF REVIEW**

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381

---

[1] This decision is rendered by the Hon. Judge Jane Magnus-Stinson from the United States District Court for the Southern District of Indiana, sitting by designation.  [Dkt. 18.]

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn Colvin, Acting Commissioner of the SSA, is automatically substituted for the originally named defendant, Michael Astrue.

F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the SSA for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can she perform her past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

## II.
### BACKGROUND

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on September 24, 2010. [Dkt. 8 at 13-19.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Lor did not engage in substantial gainful activity[3] since October 16, 2007, the date she applied for benefits. [*Id.* at 15.]

- At Step Two, the ALJ found that Ms. Lor had one severe impairment: a tear in her right shoulder rotator cuff. [*Id.*] The ALJ further noted that Ms. Lor alleged suffering from other conditions that interfered with her ability to work. [*Id.*] However, the ALJ concluded that none of these conditions—diabetes, mellitus, hypertension, headaches, wrist, neck, foot, and back pain, venous insufficiency, and stomach ulcers—had "more than a minimal effect on her ability to work." [*Id.* at 15-16.]

- At Step Three, the ALJ found that Ms. Lor did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. The ALJ concluded that Ms. Lor had the residual functional capacity ("RFC") to perform light work. [*Id.* at 15-17.] Furthermore, the ALJ noted that, among other things, Ms. Lor's "statements concerning the intensity, duration and limiting effects of [her] symptoms cannot be found credible," and thus "there is no basis for finding she has suffered debilitating symptoms that would further reduce [her RFC]." [*Id.* at 17-18.]

- At Step Four, the ALJ found that Ms. Lor had no past relevant work. [*Id.* at 18.]

- At Step Five, the ALJ relied on Medical-Vocational Rules (the "Grid"), specifically Rule 202.16, to conclude that a person with Ms. Lor's RFC can perform jobs that exist in significant numbers in Wisconsin. [*Id.* at 18-19.]

Based on these findings, the ALJ concluded that Ms. Lor was not disabled and thus not entitled to benefits. [*Id.* at 19.] Ms. Lor sought review of the ALJ's decision from the Appeals Council. [*Id.* at 9.] The Appeals Council denied her request for review

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

on January 27, 2012. [*Id.* at 4-6.] Ms. Lor's appeal from that decision is now before this Court.

### III.
#### DISCUSSION

Ms. Lor seeks reversal of the ALJ's decision on four bases: (1) the ALJ erred at Step Two by concluding that Ms. Lor's diabetes and diabetic neuropathy were not severe impairments, [dkt. 12 at 17-18]; (2) the ALJ ignored the state agency physician's findings that Ms. Lor had certain nonexertional limitations, and therefore did not include these limitations in her RFC, which affected the ALJ's Step Five determination, [*id.* at 11-15]; (3) the ALJ was required to call a vocational expert ("VE") pursuant to Social Security Rule ("SSR") 83-12 because Ms. Lor partially lost the use of an upper extremity, *i.e.*, her right shoulder, [*id.* at 15-17]; and (4) the ALJ failed to consider Ms. Lor's inability to communicate in English as a nonexertional limitation, [*id.* at 17]. The Court addresses the arguments in this order, but after concluding that the second requires reversal, does not reach the final two.

    **A.**    **The ALJ did not err at Step Two in concluding that Ms. Lor's Diabetes and Diabetic Neuropathy were not severe impairments.**

At Step Two, the ALJ recognized that Ms. Lor had been diagnosed with Type II Diabetes Mellitus, but concluded that it was not a severe impairment. [Dkt. 8 at 15.] Specifically, the ALJ noted that Ms. Lor's diabetes "has been relatively well controlled with no evidence of associated significant end organ damage or functional loss." [*Id.*] Ms. Lor contends that this was error. [Dkt. 12 at 17-18.] Specifically, she cites to various medical records that show she had pain in her hands and feet that treating physicians thought was caused by diabetic neuropathy, and she argues that the ALJ ignored this evidence. [*Id.*] The Commissioner responds that the ALJ adequately considered Ms. Lor's diabetes but concluded that it was well-controlled and thus

not a severe impairment. [Dkt. 16 at 4-5.] In the end, the Court concludes that substantial evidence supports the ALJ's decision that Ms. Lor's diabetes and diabetic neuropathy were not severe impairments.

A severe impairment is one that "limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Ms. Lor bears the burden at Step Two of establishing that a given impairment is severe. *See Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2000).

After reviewing Ms. Lor's medical records, including the records to which Ms. Lor cites, the ALJ concluded that Ms. Lor's diabetes was "well controlled" and that there was "no evidence of associated . . . functional loss." [Dkt. 8 at 12.] Substantial evidence supports this conclusion, and the evidence on which Ms. Lor relies does not alter that result.[4]

To demonstrate that her diabetic neuropathy was severe, Ms. Lor primarily relies on medical records from February 8, 2010, where Ms. Lor presented with, among other things, left heel pain and "numbness and tingling to the bilateral hands."[5] [Dkt. 8 at 288.] The treating physician

---

[4] To the extent Ms. Lor argues that the ALJ erred by not considering the evidence of diabetic neuropathy, [*see* dkt. 12 at 18], the record belies this assertion. The ALJ cited the relevant medical records in reaching his ultimate conclusion. [Dkt. 8 at 15].

[5] Ms. Lor also points the Court to medical records from 1996, 2001, and 2007, but these records do not support her claim that the ALJ's assessment of her diabetic neuropathy was in error. In 1996, Ms. Lor's physician stated that it is "unlikely" that Ms. Lor's reported leg pain was caused by diabetic neuropathy. [Dkt. 8 at 156.] In 2001, her physician noted that Ms. Lor complained of "a tight feeling" and "puffiness" in her hands, which "could be some early signs of neuropathy." [*Id.* at 164.] And finally, in 2007, her physician noted that Ms. Lor complained of numbness in her toes on both feet, which is "very likely due to diabetic neuropathy." [*Id.* at 216.] Although her physician discussed treatment options with her, Ms. Lor stated that she did "not feel that she [was] having enough difficulty . . . to require any specific treatment." [*Id.*] While all of these records reveal a long-term acknowledgment of diabetic neuropathy, none of them support Ms. Lor's contention that her diabetic neuropathy caused functional loss and was thus a severe impairment.

noted that Ms. Lor had "Type 2 diabetes mellitus with peripheral neuropathy,"[6] and acknowledged that the heel pain might be due to this neuropathy. [*Id.* at 289.] However, the physician noted that, while her heel was in pain, no weakness was noted, and instructed Ms. Lor to do stretching exercises and not walk with bare feet in the house. [*Id.*] Furthermore, the physician noted that Ms. Lor's neuropathy may result in a recommendation that her dosage of Amitriptyline be increased at Ms. Lor's next visit in two to three weeks' time. [*Id.*] But the medical records from subsequent visits do not indicate any further complaints or treatment regarding Ms. Lor's diabetic neuropathy. [*Id.* at 283-88.] Indeed, the only further mention of neuropathy is in the records from her February 19, 2010, follow-up appointment regarding, among other things, her "mild peripheral neuropathy," where Ms. Lor stated that "she is doing much better." [*Id.* at 288.]

In sum, the foregoing evidence does not demonstrate that the ALJ's decision was not supported by substantial evidence. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Barnett*, 381 F.3d at 668 (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). Although the ALJ did not go through the medical evidence report by report or provide as detailed of an analysis of the medical evidence as that provided above, that amount of detail is not required. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) ("'[The ALJ] need not provide a written evaluation of every piece of evidence that is presented.'") (quoting *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). Instead, the ALJ concluded that none of the medical records demonstrate that Ms. Lor's diabetes or her diabetic neuropathy caused any "functional loss," [dkt. 8 at 15], and the evidence

---

[6] Ms. Lor was also diagnosed with "[l]eft heel plantar fasciitis vs. tarsal tunne syndrome" during the February 8, 2010 visit, [dkt. 8 at 289], but the ALJ separately assessed this diagnosis, [*id.* at 16], and Ms. Lor does not challenge the ALJ's assessment.

to which Ms. Lor points the Court in no way undermines that conclusion. Put simply, substantial evidence supports the ALJ's conclusion that Ms. Lor failed to carry her burden of proving that her diabetes or diabetic neuropathy were severe because they limited her "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Accordingly, reversal on this ground is unwarranted.

> **B.** **The ALJ erred by failing to consider the state agency physician's assessment of Ms. Lor's nonexertional impairments and the limitations they caused, and this error was not harmless.**

Ms. Lor argues that the ALJ is required to evaluate all of the medical opinions she presents, yet the ALJ erred in failing to consider the findings of state agency physician, Dr. Laura Rosch. [Dkt. 12 at 11.] Furthermore, Ms. Lor contends that by failing to consider the nonexertional limitations identified by Dr. Rosch, the ALJ was then able to use the Grid at Step Five, which only accounts for exertional limitations. [*Id.* at 14-15.] The Commissioner counters that the ALJ did consider the opinion of Dr. Rosch, [dkt. 16 at 6], and that "the nonexertional limitations indicated by Dr. Rosch . . . were not inconsistent with the ability to perform light work," [*id.* at 7-8]. To demonstrate that the ALJ's RFC determination that Ms. Lor was restricted to light work is consistent with the nonexertional limitations identified by Dr. Rosch, the Commissioner cites several SSRs regarding those nonexertional limitations and suggests that, in certain circumstances, those limitations do not affect one's ability to perform light work. [*Id.*] Because the ALJ's RFC was consistent with the nonexertional limitations identified by Dr. Rosch, the Commissioner reasons, the ALJ could reasonably rely on the Grid at Step Five. [*Id.* at 8.]

While SSRs "do not have the force of law," they are "'binding on all components of the Social Security Administration,'" including ALJs. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999) (quoting 20 C.F.R. § 402.35(b)(1)). SSR 96-6p provides that, although ALJs "are not

bound by findings made by State agency or other program physicians . . . they may not ignore these opinions and *must* explain the weight given to the opinions in their decisions." SSR 96-6p at *2 (emphasis added). In other words, ALJs are not "required to follow" state agency physicians' opinions, but they are "required to consider" them. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011).

Dr. Rosch, a state agency physician, concluded that Ms. Lor was restricted to light work, [dkt. 8 at 230], that she had nonexertional limitations in that she could only occasionally engage in climbing, balancing, stooping, kneeling, crouching, and crawling, [*id.* at 232; *see* SSR 83-10 at *6 (identifying these limitations as nonexertional)], and that she should avoid concentrated exposure to hazards, [*id.* at 233]. Despite the Commissioner's unadorned assertion that "the ALJ considered the opinion of Dr. Rosch," she does not cite any portion of the ALJ's opinion proving this to be the case.[7] [Dkt. 16 at 6.] Indeed, as Ms. Lor contends and the record reveals, there is "[n]ot one mention . . . in the ALJ's decision regarding the State Agency physician's findings." [Dkt. 12 at 11.] The ALJ did not acknowledge the nonexertional limitations identified by Dr. Rosch at all, let alone "explain the weight given to [them]," as required by the rules. SSR 96-6p at * 2. This failure alone constitutes error. *See McKinzey*, 641 F.3d at 891 (holding that the ALJ erred by violating SSR 96-6p because "there [wa]s no indication in the record . . . that she gave [the state agency physician's] opinion proper consideration"); *see also Walters v. Astrue*, 444 Fed. Appx. 913, 917-18 (7th Cir. 2011) (holding that the ALJ erred by violating SSR 96-6p be-

---

[7] The closest the ALJ comes to even acknowledging Dr. Rosch's findings is his concluding statement that "[t]he overall determination in this case . . . does not conflict with the ultimate conclusions reached earlier by the State Agency." [Dkt. 8 at 18.] But this lone statement does not acknowledge Dr. Rosch's specific findings or "explain the weight given to the [them]." SSR 96-6p at *2. It is likely also incorrect.

cause the ALJ did not consider the state agency physician's opinion that conflicted with other evidence presented).

The Court must still assess, however, whether this error was harmless. As noted above, the Commissioner contends that "[t]he nonexertional limitations indicated by Dr. Rosch . . . were not inconsistent with the ability to perform light work." [Dkt. 16 at 7.] This is either a defense of the ALJ's decision based on grounds that the ALJ himself did not rely or an argument for harmless error. Whichever it is, reversal is still required. As to the former, the Commissioner "cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012); *see Gatimi v. Holder*, 606 F.3d 344, 347 (7th Cir. 2010) ("The *Chenery* doctrine binds the government's lawyers in judicial review proceedings to the grounds of the agency's decision."). The ALJ did not mention the nonexertional limitations identified by Dr. Rosch at all, let alone explain how, under the SSRs relied on by the Commissioner here, they were not inconsistent with Ms. Lor's ability to perform light work. [*See* dkt. 8 at 17-18.]

As to the latter, the harmless-error doctrine does not apply in this case. Under harmless-error review, reversal is not required if the Court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, --- F.3d ----, 2013 WL 5485143, *5 (7th Cir. 2013). The Court is unable to do so here. As set forth below, the SSRs on which the Commissioner relies only demonstrate that the result could be the same, not that it will almost certainly be the same. This is insufficient to deem an error harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

Relying on SSRs 83-14 and 85-15, the Commissioner contends that the ALJ's decision was consistent with Dr. Rosch's opinion. [*See* dkt. 16 at 7-8]. Specifically, the Commissioner

contends that these SSRs demonstrate that the nonexertional limitations Dr. Rosch found do not preclude an individual from performing the full range of light work. [*See id.*] Put differently, the Commissioner argues that these SSRs dictate that the nonexertional limitations identified by Dr. Rosch continue to allow a claimant to perform the full range of light work. Ms. Lor responds that the Commissioner misreads SSRs 83-14 and 85-15, [dkt. 17 at 8-13], and the Court agrees.

To evaluate the Commissioner's position the Court must first set forth the contours of the two SSRs on which the Commissioner relies. Beginning with SSR 85-15, it "applies when a claimant has only nonexertional impairments." *Lippart v. Barnhart*, 63 Fed. Appx. 260, 267 n.2 (7th Cir. 2003); *see* SSR 85-15 at *2 ("This [Program Policy Statement] clarifies policies applicable in cases involving the evaluation of solely nonexertional impairments."). But when a claimant has "both exertional and nonexertional impairments, SSR 83-14 applies." *Lippart*, 63 Fed. Appx. at 267 n.2. Therefore, because the ALJ concluded that Ms. Lor had exertional impairments, SSR 85-15 does not bear on the relevant question, and the Court must look solely to SSR 83-14.[8]

SSR 83-14 establishes a "framework" for evaluating an individual presenting "both strength limitations and nonexertional limitations." SSR 83-14 at *3. "[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules . . . reflecting the individual's maximum residual strength capa-

---

[8] The Court notes that the Commissioner specifically relies on SSR 85-15 to demonstrate that, among other things, "occasional limitations on stooping and crouching would not erode the occupational base for light work." [Dkt. 16 at 7.] But the Seventh Circuit has rejected the Commissioner's reliance on SSR 85-15 to make a nearly identical argument, and thus the Court rejects it here. *See Lippart*, 63 Fed. Appx. at 267 n.2 ("The Commissioner relies on SSR 85-15 to prove that [the claimant's] inability to bend repeatedly did not restrict a full range of light work and thus did not prevent use of the grids. SSR 85-15, however, applies when a claimant has only nonexertional impairments. Because [the claimant] contends that he has both exertional and nonexertional impairments, SSR 83-14 applies.") (citation omitted).

bilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.* As the Rule recognizes, "[a] particular additional . . . nonexertional limitation may have very little effect on the range of work remaining that an individual can perform," but "[o]n the other hand, an additional . . . nonexertional limitation may substantially reduce a range of work." *Id.* Cases "falling between the two extremes[] are more complex and generally will necessitate additional evidence to determine the effects of the non-exertional limitation on the job base."[9] *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir. 1986); *see also Haynes v. Barnhart*, 416 F.3d 621, 629 (7th Cir. 2005). In other words, when the effect of the claimant's nonexertional limitations on the occupational base is unclear, the ALJ must consult a VE. *See Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994) ("[I]n cases where a non-exertional limitation might substantially reduce a range of work an individual can perform, the ALJ must consult a vocational expert."); *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) (recognizing that "in cases where there is a nonexertional impairment [in addition to exertional impairment] the ALJ must go beyond the grid").

---

[9] To elucidate how ALJs should decide where on the spectrum the case before them falls, SSR 83-14 provides examples of how a claimant's combination of exertional and nonexertional limitations can affect the Step Five determination. The Commissioner relies on these examples as support for her position; for example, the Commissioner cites SSR 83-14 for the proposition that "an inability to crawl on hands and knees would have very little or no effect on the unskilled light occupational base." [Dkt. 16 at 7.] It is true, as the Commissioner asserts, that the "inability to crawl on hands and knees . . . would . . . not significantly affect the potential unskilled light occupational base." SSR 83-14 at *5. But this statement was made as part of an example of a claimant limited to "[l]ight exertion combined with *a* nonexertional requirement," not several. *Id.* at *4-5 (emphasis added). The Court cannot extrapolate from this singular example that the occupational base would not diminish for a claimant with light exertion combined with several nonexertional restrictions. And, more to the point, SSR 83-14 does not state that a claimant with all of the nonexertional limitations identified by Dr. Rosch would necessarily be able to perform the full range of light work. Thus, while the ALJ may derive guidance from this example in evaluating Ms. Lor's nonexertional limitations, this inapposite example does not allow the Court to predict with confidence what the ALJ will ultimately conclude.

Pursuant to this framework, the only instance where the ALJ can rely on the Grid for an individual with both exertional and nonexertional limitations is "[w]here it is clear that the additional [nonexertional] limitation or restriction has very little effect on the exertional occupational base." SSR 83-14 at *6. Here, the ALJ relied on the grid without acknowledging or explaining the weight given to Dr. Rosch's conclusion that Ms. Lor had several nonexertional impairments. [Dkt. 8 at 232-33]. Thus, the ALJ never conducted the assessment required under SSR 83-14 to determine whether use of the Grid was appropriate.

Certainly, had the ALJ considered Dr. Rosch's findings, the ALJ *could* have relied solely on the Grid if he concluded that no nonexertional limitations existed, or if it was "clear" that Ms. Lor's nonexertional limitations had "very little effect on the exertional occupational base." SSR 83-14 at *6. However, the ALJ also could have concluded that Ms. Lor's nonexertional impairments "substantially reduce[d] a range of work [she could] perform," which would mandate the consultation of a VE. *Luna*, 22 F.3d at 691. Thus, the problem with the Commissioner's position is that, because the ALJ did not consider Dr. Rosch's evidence at all, the Court cannot ascertain whether the SSR 83-14 framework would have been triggered, let alone what result the ALJ would have reached had it applied that framework. Because of this uncertainty, the Court cannot "predict with great confidence that the result on remand would be the same."[10] *Schomas*, ---

---

[10] Two cases involving the same error identified here—violating SSR 96-6p by failing to consider the opinion of a state agency physician—support the Court's conclusion. In *McKinzey*, the Seventh Circuit concluded that the ALJ's failure to consider the state agency physician's opinion was harmless in light of the ALJ's reliance on the opinion of the claimant's "treating specialist." 641 F.3d at 892. The Seventh Circuit explained that, "[w]hile the [state agency physician's opinion] is entitled to consideration as a non-examining source, it does not carry the weight in comparison to the opinion of a treating specialist," whose opinion was of "singular weight and importance." *Id.* Here, the ALJ did not rely on a physician's opinion of more significance than Dr. Rosch's, but simply ignored it. This makes this case more analogous to *Walters*, where the Seventh Circuit concluded that the error was not harmless because there was conflicting evidence regarding the claimant's RFC. *See* 444 Fed. Appx. at 917-18.

- 12 -

F.3d ----, 2013 WL 5485143, at *5; *see also Spiva*, 628 F.3d at 353 ("[T]he fact that the [ALJ] . . . might have reached the same result does not prove that her failure to consider the evidence was harmless.").

Accordingly, the error was not harmless and the Court must reverse and remand this case. Because reversal is required on this ground, the Court does not reach the other two arguments raised by Ms. Lor. However, upon remand, depending on the ALJ's assessment of Dr. Rosch's medical opinion, the ALJ may need to use the decisional framework set forth in SSR 83-14. This may ultimately result in the sole use of the Grid, or it may require the testimony of a VE. Either way, the ALJ must consider the fact that Ms. Lor "does not communicate in English" in making his ultimate determination. [Dkt. 8 at 18.] And, regardless of whether a VE is required under SSR 83-14, as noted by Ms. Lor, the ALJ should also consider whether the special situation in SSR 83-12—"loss of use of an upper extremity"—applies to Ms. Lor and would independently require the testimony of a VE. [*See* dkt. 12 at 15-16.]

## IV.
### CONCLUSION

For the reasons stated herein, the ALJ's denial of relief is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. Judgment shall issue accordingly.

**Distribution via ECF:**

All counsel of record